JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6758
   Facsimile: (415) 436-6753
   E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0420-PJH(BZ) |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER |
| RUSSELL ALLEN LYLES, JR., | Hearing: August 27, 2008 |
| Defendant. | Time: 1:30 pm |
| | Court: Honorable Bernard Zimmerman |

**Introduction**

Defendant Russell Allen Lyles, Jr., has moved the Court for reopening of his June 17, 2008 detention hearing after which the Court ordered Lyles detained pending trial because he posed a danger to the community. Because the defendant has presented no new material information that was not available to him during the original detention hearing, his motion should be denied. Alternatively, should the Court decide to reconsider its prior detention order and address the merits of the defendant's bail application again, the defendant should still be detained because he remains both a risk of flight and a danger to the community.

**Background**

On June 12, 2008, law enforcement officers executing a federal search warrant on the defendant's home in Willets, California, found evidence that the defendant was involved in narcotics trafficking. Among other things, the search agents found: (a) roughly 84 individual marijuana plants in an elaborate indoor grow located in the basement of the defendant's house; (b) three shotguns, two rifles, and one pistol; two of the shotguns and the pistol were loaded; (c) magazine clips and rounds of ammunition, including a high-capacity drum magazine for an AR-15 rifle; (d) several knives and bladed weapons; (e) additional weapons, such as brass knuckles, saps, and a mace; (f) seven[1] Kevlar bulletproof vests; and (g) a bag of processed marijuana. See Complaint 3-08-00420-PJH(BZ) ("Complaint") ¶ 5.b.

While the search was being conducted, other law enforcement officers Mirandized the defendant and asked him whether he wanted to make any statements. He agreed to do so and stated, among other things, that: (a) all the marijuana, firearms, and bulletproof vests found in the house belonged to him; (b) he sold the marijuana he grew; (c) he uses marijuana; (d) he had grown two to three cycles of marijuana plants, but then had two cycles that went bad, so he downsized his growing operation to its present size with fewer but larger plants; (e) since downsizing his marijuana growing operation, he has grown two to three cycles; and (f) he possessed the firearms that were found in his home to protect his house. See Complaint ¶5.d.

Based on the items found in the defendant's home and on his inculpatory admissions, the defendant was arrested. The following day, the defendant was charged in a complaint with one count of distribution and possession with intent to distribute at least 100 individual marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), one count of possession of a firearm in furtherance of a narcotics felony, in violation of 18 U.S.C. § 924(c), and one count of being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). See Complaint ¶ 2.

The defendant was presented before the Honorable Bernard Zimmerman on June 13,

---

[1] The Government initially reported that agents recovered eight bulletproof vests, but this figure was too high by one vest.

OPP. TO MOTION FOR RECON. OF DETENTION          2

2008. At his presentment, the defendant was represented by Anthony Brass, Esq., who requested that a detention hearing be scheduled for the defendant on June 17, 2008. See Docket Entry # 2. On June 17, the parties appeared before Judge Zimmerman and, over roughly the next hour (with a break to allow other cases to be heard), presented their respective arguments for and against the defendant's detention.

The Government, noting that there was a presumption against bail for the defendant, sought to detain the defendant because the defendant posed both a risk of flight and a danger to the community. The Government argued that the defendant posed a flight risk because, among other things: its case was strong; the defendant faced a substantial sentence if convicted, giving him an incentive to flee; the defendant's repeated past encounters with law enforcement and his admitted drug use suggested that he would be unable to comply with any bail conditions; his past international travel and his membership in the Hell's Angels Motorcycle Club provided the defendant with a network of contacts who could shelter him. The Government also argued that the defendant posed a danger because, among other things: the defendant's past contacts with law enforcement involved weapons and conflict with law enforcement officers and the defendant possessed a small arsenal of firearms, other weapons, and bulletproof vests. See Audio Recording of Lyles Detention Hearing ("Recording") from ~ 10:01:22 am to ~ 10:12:29 am.[2]

In response, the defendant, through Mr. Brass, contended that the presumption that the defendant is a flight risk had been rebutted because, among other things: the defendant had roots in the community, as evidenced by the individuals who appeared in court to attend the detention hearing, and certain individuals were willing to be sureties for the defendant. See Recording at ~ 10:13:11 am, 10:17:24 am, 10:18:33 am; see also id at ~ 10:15:13 am (Mr. Brass asking Lyles'

---

[2] A transcript of the June 17, 2008 detention hearing was not made, and due to the relatively compressed schedule for this motion, the Government has not been able to prepare one in time for inclusion with this submission. However, because what occurred at the original detention hearing is important to determining whether the defendant has presented new material information not previously available to him, the Government has relied on the audio recording of the June 17 hearing in this response. Citations to the recording reference the approximate time — in the format "hour:minute:second" — during which an assertion, argument, or finding was beginning to be articulated.

OPP. TO MOTION FOR RECON. OF DETENTION        3

1    supporters to stand up).  Counsel also noted that the defendant was a Hell's Angels member, and
2    that this fact supported the defendant's release because Hell's Angels members did not flee when
3    charged with crimes; indeed, Mr. Brass advised the Court that two Hell's Angels members
4    recently surrendered to begin serving 10-year sentences.  See Recording at ~ 10:18:01 am.  Mr.
5    Brass also argued that the presumption against danger had been rebutted because, among other
6    things, the defendant's past convictions were all for misdemeanors, see Recording at ~ 10:19:13
7    am, the defendant's conviction for resisting a public officer could encompass a variety of
8    conduct, see id. at ~ 10:16:18 am, the defendant was cooperative with law enforcement officers
9    at the time he was arrested, see id. at ~ 10:16:28 am, the defendant's past arrests for guns were all
10   pled down to non-firearms related misdemeanors, see id. at ~ 10:14:33 am, and the defendant's
11   possession of firearms was lawful, see id. at ~ 10:13:50 am, and could be explained by the fact
12   that there were bears in Willets, see id. at ~ 10:14:16 am.
13        After hearing both sides' arguments, the Court took a brief recess to consider them.  See
14   Recording at ~ 10:22:10 am.  Following the recess, the Court concluded that, although the
15   defendant had rebutted the presumption that he was a flight risk, the Government had carried its
16   burden of establishing that the defendant posed a danger to the community.  See Recording at ~
17   10:45:19 am to ~ 10:52:50 am.  In particular, the Court noted that the defendant's past criminal
18   history — which involved the possession of firearms and at least the threat of violence —  his
19   array of weapons, and his stockpile of bulletproof vests, suggested that no conditions could be
20   established to guarantee the community's safety: in the Court's view, there were "too many
21   weapons" and ammunition, and the possession of bulletproof vests was particularly troubling.
22   Recording at ~ 10:49:03 am to ~ 10:52:10 am.  The Court also expressed doubt that, given the
23   defendant's history of continuing to commit crimes while on probation, he would abide by any
24   promises he made to the Court.  See Recording at ~ 10:51:20 am.
25        Mr. Brass then suggested placing the defendant in either a halfway house or in the
26   custody of one of the defendant's friends.  See Recording at ~ 10:53:42 am, 10:54:48 am  After
27   considering these options, the Court ultimately decided to detain the defendant.
28        Following the detention hearing, on June 26, 2008, a Grand Jury indicted the defendant

OPP. TO MOTION FOR RECON. OF DETENTION         4

for the crimes charged in the Complaint, and the case was assigned to Judge Hamilton. Due to a potential conflict, Mr. Brass withdrew as counsel for the defendant, and on July 16, 2008, present counsel, Alan Caplan, Esq., was retained. On August 16, 2008, Mr. Caplan filed the present motion for reconsideration of the Court's detention order.

**The Defendant's Motion For**
**Reconsideration Of The Court's Detention Order Should Be Denied**

The defendant, through new counsel, seeks reconsideration of the Court's detention order. He contends that he now has new and material information that was not previously available to him at the time of the June 17, 2008 detention hearing. Despite his claim to be presenting new information to the Court, however, in actuality, the defendant is merely re-arguing the same facts and issues that he presented to the Court at the original detention hearing. Accordingly, the defendant's motion for reconsideration should be denied.

In the event that the Court decides to address again the merits of the defendant's bail application, however, the Government respectfully submits that the defendant remains both a risk of flight and a danger to the community. Accordingly, even if the Court were to reopen the defendant's detention hearing, the defendant should again be ordered detained.

**I.   Applicable Law**

Under the Bail Reform Act of 1984 (the "Act"), a detention hearing may be "reopened" only if "the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3242(f) is interpreted "strictly" so that reopening of a detention proceeding must be denied if the newly proffered information was "available" at the prior hearing. United States v. Ward, 63 F. Supp. 2d 1203, 1206 (C.D.C.A. 1999). A detention hearing should not be reopened merely to permit the defendant to reargue issues previously raised, to present cumulative evidence, or to offer evidence available to him at the time of the prior hearing. See e.g., United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991) (per curiam) (holding that eighteen affidavits, seven letters, and

1   additional security for bond that was not previously presented to court was not new information
2   previously unavailable to defendant justifying reopening); United States v. Hare, 873 F.2d 796,
3   799 (5th Cir. 1989) (holding that testimony of additional family and friends of the defendant that
4   was not previously presented to court was not new evidence justifying reopening); United States
5   v. Roberts, 2007 WL 3089, at *2 (E.D. Tenn. Jan. 4, 2007) (rejecting motion for reconsideration
6   of detention and holding that, among other things, letters from pastor, mother, state correctional
7   officer, and others vouching for the defendant's post-detention rehabilitation does not constitute
8   material information not known to the movant as time of original detention hearing); United
9   States v. Sarivola, 1995 WL 459243 (S.D.N.Y. August 3, 1995) (holding that testimony of four
10  family members who did not testify at first bail hearing did not constitute new evidence of
11  material value).

**II.   The Defendant's Motion For Reconsideration Should Be Denied Because He Has Not Presented Any New Information That Was Previously Unavailable To Him.**

In his present motion for reconsideration, the defendant claims that he has "new" and material facts relating to bail that was not previously available to him. The defendant largely contends that this new information is based on the discovery that the Government has provided to him. The defendant's characterization of his information as new and previously unavailable, however, is inaccurate. Rather than being new or previously unavailable, all the information he now presents as novel in support of his motion for reconsideration was actually presented to this Court or was available to the defendant for his June 17, 2008 detention hearing.

   a.   **The Defendant's Admissions Were Available To Him**

The Government has provided the defendant with an audio recording of his June 12, 2008 admissions to law enforcement officers, and the defendant now breathlessly claims that his own review of his own statements suggests that the evidence is weaker than what was presented to the Court at the detention hearing because the defendant made what he now characterizes as self-exculpatory statements. See Declaration of Alan Caplan ¶ 17-20. The Government stands by its representations made at the detention and in its Complaint that the defendant admitted to, inter alia: growing marijuana for sale for multiple growing cycles; owning all the marijuana found in

1  his house; owning all the firearms found in the house; owning the firearms to protect his house;
2  and being a user of marijuana.  The defendant is certainly entitled to his own characterization of
3  the strength of the evidence against him, and it is probably safe to say that the parties will never
4  agree on the meaning of the defendant's admissions.

5  What cannot be reasonably disputed, however, is that the defendant's admissions cannot
6  be deemed new information that was not previously available to him.  The defendant knew fully
7  what he said to law enforcement agents.  Thus, for him to argue now that he is entitled to
8  reopening of his detention hearing because the self-serving, *arguably* self-exculpatory statements
9  that he made to law enforcement officers only became "available" to him after the Government
10 produced them is preposterous.

11 **b.     The Defendant's Search Warrant Claim Is Premature And Meritless**

12 The defendant also contends that, having received and reviewed copies of the search
13 warrant for his Willets home, the search warrant is somehow defective and, as a result "it is not
14 unlikely that the Court will suppress all evidence seized, thereby requiring dismissal of the
15 instant charges."  Declaration of Alan Caplan ¶ 22.  Aside from general allegations about errors
16 and inaccuracies, however, the defendant fails to specify how the search warrant is supposedly
17 defective.  His most specific claim appears to be that law enforcement officers "violated the
18 explicit no-knock provision that this Court had inserted" into the search warrant.  Declaration of
19 Alan Caplan ¶ 22.  This argument, however, is both factually incorrect and legally unavailing.

20 As set forth in the Declaration of Investigator John McCutcheon (attached hereto as
21 Exhibit A), who was the affiant in the search warrant application, the Government sought
22 prospective authorization from the Court for law enforcement officers to enter the defendant's
23 home without providing notice of their authority or presence.  See McCutcheon Declaration ¶ 3.
24 The Court denied this request for "no-knock" authorization and specifically advised Investigator
25 McCutcheon that the officers executing the search warrant will have to make a judgment call as
26 to how they entered the defendant's home based on the prevailing circumstances at the time of
27 entry.  See McCutcheon Declaration ¶ 4.  The Court did not, as the defendant now claims, forbid
28 law enforcement officers from forcing their way into the defendant's home.  See McCutcheon

OPP. TO MOTION FOR RECON. OF DETENTION            7

Declaration ¶ 4. In any event, as set forth in Investigator McCutcheon's Affidavit, law enforcement officers did in fact announce their presence and authority before forcing entry into the defendant's home: at approximately 5:15 am on June 12, 2008, members of the search team parked their cars with their lights on around the defendant's home, they announced who they were and the fact that they had a search warrant, they knocked on the door to the Willet's home and waited for approximately 15 to 20 seconds with no response, and only then, did the entry team force their way into the home. See McCutcheon Declaration ¶ 5.

Thus, the officer's entry into the defendant's home on June 12 did not violate any order of the Court and was factually reasonable. However, even assuming that there was some sort of violation of some sort of "knock and announce" requirement for the execution of the search warrant, suppression of the evidence derived from the search is not the remedy for any such violation. See United States v. Ankeny, 502 F.3d 829, 835 (9th Cir. 2007) (holding that suppression for violation of knock and announce rule is foreclosed by Hudson v. Michigan, 547 U.S. 586 (2006)). Thus, even ignoring the lack of any factual basis for his challenge to the search warrant, the relief he hopes for — suppression of evidence — is unavailable to him.

If, in the future, the defendant should somehow successfully challenge the validity of search warrant issued by the Court, he may — at that point — have new and material information sufficient to reopen the detention hearing. Until that result occurs, however, he cannot claim to have new and material information sufficient to reopen his detention hearing.

### c. The Defendant's Other Claims Are Not Based On Previously Unavailable Information

The defendant challenges other findings made by the Court. Yet in none of these challenges does the defendant present new material information that was previously unavailable to him.

For instance, the defendant claims that the Court erred by suggesting that he may have the financial resources to flee and, in support of this claim, refers the Court to his self-serving statements to law enforcement officers, in which he contends that he has not had a "good [marijuana] harvest in so long" and that he had little money. Declaration of Alan Caplan ¶ 24.

1  As noted above, however, the defendant's own statements that he made to law enforcement
2  officers on June 12 were available to him at the June 17 detention hearing.
3      The defendant further contends that his failure to appear in state court in Ukiah on
4  November 28, 2007 can be explained by his present claim that his attorney at the time, Patrick
5  Ciocca, instructed him not to appear. Declaration of Alan Caplan ¶ 25. This excuse, however, is
6  hardly new and material information that was not available to the defendant at his June 17, 2008
7  detention hearing. The defendant, of all people, should have known why he failed to appear in
8  court on November 28, 2007, and if he felt it was relevant to his detention, he should have
9  presented his explanation on June 17 instead of doing so some two months later in a motion for
10  reconsideration.
11      Similarly, the issue regarding the significance of the defendant's "Filthy Few" patch was
12  raised on June 17 in the defendant's Pre-Trial Services Report and by the Court. See Recording
13  at ~ 10:50:53 am. At the time, the defendant, did not challenge or try to assuage the Court's
14  concern. He now, however, has submitted some thirty pages of documents in support of his
15  claim that Filthy Few merely means an individual who enjoyed social events, as opposed to
16  something more sinister. Nevertheless, these documents cannot be deemed new material
17  information that was previously not available to the defendant at the June 17 detention hearing.
18  The documents date from 2007 or earlier. If the defendant was so keen to present these
19  documents in support of his "Filthy Few" argument, he should have done so on June 17..
20      The remainder of the defendant's arguments — for instance, his weapons were lawfully
21  owned, his prior convictions did not involve "assaultive behavior"— were presented to the Court
22  on June 17. See Recording at ~ 10:13:50 am (weapons lawfully owned); 10:16:18 am and
23  10:19:13 am (prior convictions did not involve violence). Not only are these arguments not
24  based on previously unavailable information, they are, in fact, old arguments that have been
25  raised again without even the thinnest gloss of revision.
26                                * * * * *
27      In sum, the defendant's present effort to reopen his detention hearing should be denied.
28  He has utterly failed to present any new, material information that was previously not available to

him, as required under § 3142(f). Rather, he has merely presented the same claims that he made to the Court at his June 17 detention hearing without providing any new information that was not previously available to him. Accordingly, the defendant's motion for reconsideration of his detention order should be denied.

## II. The Defendant Should Be Ordered Detained Even If His Detention Hearing Is Reopened

Should the Court decide to reopen the defendant's detention hearing and consider the merits of his bail applicable, the Government respectfully submits that the defendant should be ordered detained again as both a risk of flight and a danger to the community.

The Bail Reform Act permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). For cases such as this one, in which the defendant is charged with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 924(c), there is a rebuttable presumption that the defendant is *both* a flight risk and a danger to the community. See 18 U.S.C. § 3142(e). Once the presumption is triggered, the defendant has the burden of producing evidence to rebut it. See, e.g., Hare, 873 F.2d at 798; United States v. King, 849 F.2d 485, 488 (11th Cir. 1988).

If the defendant proffers evidence to rebut the presumption, there are several factors in determining whether pretrial detention would be appropriate: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986); United States v. Motamedi, 767 F.2d 1403, 1407 (9th Cir. 1985). The weight of the evidence is the least important of the factors. See Winsor, 785 F.2d at 757.

Moreover, the presumption itself constitutes a factor for the Court's consideration. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with

1  other evidence relevant to factors listed in § 3142(g).'" United States v. Hir, 517 F.3d 1081,
2  1086 (9th Cir. 2008) (quoting United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986));
3  United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1986).
4      Given these principles, the Government respectfully submits that the defendant should be
5  ordered detained again.  As the Government argued in the original detention hearing, the
6  Government's case is strong, the sentencing consequences to the defendant are dire, and the
7  defendant's past criminal history — and in particular, his commission of the charged offenses as
8  well as past offenses while on probation — indicate that he is a risk of flight.  In addition, the
9  sheer number of weapons seized, coupled with the defendant's stockpiling of bulletproof vests
10 and his demonstrated inability to comply with judicial supervision also indicate that he is a
11 danger to the community.  Accordingly, the defendant should be ordered detained again.

12 **Conclusion**

13     For all of the foregoing reasons, the defendant's motion for reconsideration of his
14 detention order should be denied.  In the alternative, should the Court find that he has presented
15 new material information that was previously unavailable to him, the defendant should still be
16 detained on the merits.

17

18     Respectfully submitted

19     JOSEPH P. RUSSONIELLO
    United States Attorney
20

21
    By:   /s/
22     W.S. Wilson Leung
    Assistant United States Attorney
23

24

25

26

27

28

OPP. TO MOTION FOR RECON. OF DETENTION    11

JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6758
    FAX: (415) 436-6753

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-08-00420-PJH(BZ) |
| | ) | |
| v. | ) | |
| | ) | |
| RUSSELL ALLEN LYLES, JR. | ) | DECLARATION OF JOHN MCCUTCHEON |
| | ) | |
| Defendant. | ) | |
| | ) | |

    I, JOHN MCCUTCHEON, hereby declare and state the following:

    1.    I am an Investigator with the Sonoma County District Attorney's Office, and have been so employed for approximately one year. Prior to becoming an Investigator, I was employed as a police officer with the Ukiah Police Department for approximately 22 years. During my last 10 years with the Ukiah Police Department, I was a Detective-Sergeant and supervised teams of investigators in a variety of matters. During my career in law enforcement, I have received training on a variety of different subjects, including the detection of narcotics, marijuana cultivation, criminal procedure, search and seizure and maintenance of evidence, and the organization of gangs and other criminal enterprises. I have drafted more than 30 search

1. warrants and participated in the execution of more than 50 search warrants. Earlier this year, I was deputized as a Deputy United States Marshal.

2. I respectfully submit this Declaration to provide certain additional background facts regarding the June 9, 2008 search warrant for 25520 Poppy Drive, Willits, California and the execution of the search warrant on June 12, 2008. I have not provided all I know about the underlying investigation in this Declaration. In addition, where I reference information or statements provided or made by others, they are recounted in sum and substance and in relevant part only.

3. During the afternoon of June 9, 2008, I appeared before Magistrate Judge Bernard Zimmerman of the United States District Court for the Northern District of California for the purpose of swearing to the contents of an affidavit that was submitted in support of the United States' application for a search warrant for the premises known and described as 25520 Poppy Drive, Willits, California. As set forth in greater detail in that affidavit, I believed that Russell Lyles, Jr., lived at the Poppy Drive address, and that he was operating an illegal indoor marijuana grow in his home, in violation of federal law. I also believed that Lyles was armed and a member of the Hell's Angels Motorcycle Club, which actively cultivates an image of resisting law enforcement. In addition, approximately two weeks prior, on or about May 24, 2008, a Hell's Angels prospective member had been shot and killed during a club ride, and I believed that the group's members would still be tense and angry. Moreover, a motorcycle rally known as the "Redwood Run" was scheduled for June 13 through 15, 2008, so I expected that other Hell's Angels would be staying with Lyles and present in his home during the execution of the search warrant. Accordingly, based on all these factors, I sought authorization from the Court to execute the search warrant at any time of day or night as well as prospective authorization for the search team not to have to announce their presence and authority before entering Lyles' home.

4. Magistrate Judge Zimmerman found probable cause to search Lyles' home and granted the request for authorization to execute the warrant at any time of day or night. Judge Zimmerman, however, denied the request for prospective "no-knock" authorization. Judge Zimmerman explained that he was unaware of any authority allowing him to provide prospective

1  no-knock authorization.  Accordingly, he stated that he was not going to grant the request, but
2  added that the members of the search team should exercise their judgment based on the
3  circumstances they find at the time of execution of the warrant to determine whether no-knock
4  entry would be reasonable.  Judge Zimmerman did not prohibit the search team from conducting
5  a no-knock entry, nor did he prohibit the search team from forcibly entering the premises to be
6  searched.

7      5.    At approximately 5:15 am on June 12, 2008, I was part of the search team that
8  executed the search warrant at 25520 Poppy Drive in Willits.  Because of our concerns that there
9  may be other members of the Hell's Angels present and that Lyles was armed, the initial entry
10 was conducted by members of the SWAT Team of the Federal Bureau of Investigation.  The
11 SWAT team members pulled up to the driveway of the premises in three vehicles.  The vehicles
12 had their emergency lights on and flashing so that they could be identified as law enforcement
13 vehicles.  SWAT team members also took positions near a door on a second-floor deck, as well
14 as at another door on the north side of the residence.  Both teams then simultaneously knocked
15 loudly on the side of the house and announced, in sum and substance, "FBI, search warrant."
16 After waiting between roughly 15 to 20 seconds without a response from anyone in the house, the
17 team members at the north side of the residence breached the door and entered, while the team
18 members on the deck opened the unlocked door and entered.  As they entered, the SWAT team
19 members used small explosive diversionary devices to cover their entry.  The entry team found
20 and detained a male, later identified as Manny Monteiro, a Hell's Angel member from outside
21 California, in the family room.  They then set up ballistic shields in the room and called out for
22 any other occupants to come out.  Two females and Lyles exited other rooms and were detained.

23     6.    During the subsequent search of the premises, other law enforcement officers and
24 I found, among other things: approximately six firearms, three of them loaded; various knives
25 and other weapons; ammunition and magazine clips, including a high-capacity drum magazine
26 for an AR-15; approximately seven Kevlar bulletproof vests; and approximately 84 individual
27 marijuana plants located in an indoor grow set up in the basement of Lyles' home.
28 //

*United States* v. *Lyles*, CR-08-00420-PJH
Declaration of John McCutcheon                -3-

1 | Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury
2 | that the foregoing is true and correct.

4 | DATED:    August 25, 2008

JOHN MCCUTCHEON
Investigator
Sonoma County District Attorney's Office

*United States* v. *Lyles*, CR-08-00420-PJH
Declaration of John McCutcheon          -4-