ALAN P. CAPLAN
630 Carolina Street
San Francisco, CA 94107
(415) 826-2371
(415) 824-7148 (Fax)
MA Bar No: 072700
Email: apc716@pacbell.net

Attorney for Defendant
RUSSELL LYLES, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No: CR–08-00420-PJH-1 |
|---|---|---|
| Plaintiff, | ) | 3-08-70351 MAG |
| vs. | ) | **DEFENDANT LYLES' REPLY TO GOVERNMENT'S OPPOSITION TO HIS MOTION TO RECONSIDER DETENTION ORDER** |
| RUSSEL LYLES, JR. | ) | |
| Defendant. | ) | |

I.    **INTRODUCTION.**

This pleading is defendant's brief response to the government's Opposition to his Motion to Reconsider the Detention Order.   In essence, the prosecution's response is that no new material was presented to this Court to justify reopening the detention hearing, and therefore the motion should be denied.

Defendant submits that the cases cited by the prosecution are factually inapposite, and that a close reading of these authorities demonstrates that they actually support his contentions herein.   The only substantive proffer from the government has to do with whether or not the 26

1  member FBI Swat team violated the knock and announce requirement of the search warrant
2  authorized by this Court.

3

4  **II.     CASE LAW.**

5       In the first case cited by the government for its assertion that the detention hearing should
6  *not* be reopened, ***United States v. Ward***, 63 F. Supp.2d 1203 (C.D.Ca 1999), Magistrate Judge
7  Nakazato concluded, in fact, that it ***should*** be reopened to consider a proffer of a secured
8  $1,000,000 appearance bond. ***Id.*** at 1207. The Court ruled that "the full extent of Kazarian's
9  [the defendant's] potential sureties was not fully known and available to him [at the time of the
10 initial hearing]."
11

12      It may be noted that the initial detention hearing in ***Ward*** was held one day after his
13 arrest, and the Court also remarked on the fact that when the application for reconsideration was
14 filed some 18 days thereafter, he was represented by new counsel. ***Id.*** at 1206, fn. 3. In the case
15 at bar, only 4 days elapsed between Mr. Lyles' initial appearance and the detention hearing, and
16 more than another month elapsed before undersigned counsel filed his appearance on July 16,
17 2008.
18

19      There are also significant differences between the charges in ***Ward*** and those against Mr.
20 Lyles. Kazarian was a deputy district attorney who was accused of using his official position to
21 relay confidential information to the leader of an extensive methamphetamine manufacturing and
22 distribution conspiracy in regard to search warrants, the identities of informants (including an
23 improper search of DMV records to identify one of them), and advice to head of the enterprise to
24 keep his money in cash in a safe deposit box to avoid seizure. ***Id.*** at 1205.
25

26      By comparison, Mr. Lyles is not charged with involvement in any conspiracy
27 whatsoever, nor is there any allegation that the charged offenses relate in any way to his
28

1   membership in the HAMC.  It is essentially the case of a simple marijuana "grow" at the
2   defendant's residence.  The firearms charges all relate to lawful weapons that Mr. Lyles (a non-
3   felon) was permitted to possess.  The trial will determine whether the *circumstances* of such
4   possession was in violation of federal law.
5
6       Other cases cited by the prosecution herein were also cited by, and implicitly
7   distinguished by Judge Nakazato in *Ward*, when determining that the detention hearing should
8   be reopened.  *Id.* at 1206-1207.  In *United States v. Dillon*, 938 F.2d 1412, 1413-1414 (1st Cir.
9   1991), the Court addressed the issue of release for a defendant who was charged with
10  participating in a large marijuana conspiracy to purchase up to 4 tons, and claiming to have
11  $8,000,000 in available funds for the purchase.  The Court also noted that the videotape of the
12  arrest showed the seizure of $200,000 in cash which was to be part of the purchase money
13  furnished by defendant and other conspirators.
14
15      In *Dillon*, the initial detention hearing was held on April 4, 1991, **9 days** after his arrest.
16  Four days thereafter an appeal of the detention order was filed by original counsel with the
17  district judge, which was denied after an additional hearing on April 12, 1991.  New counsel
18  filed an appearance on April 23, 1991, and on May 6, 1991 filed a motion to reconsider the
19  detention order.  The *only* "new" information in the application for reconsideration was in the
20  form of 18 affidavits and letters from persons who knew the defendant and asserted he did not
21  present a flight risk or danger to the community.
22
23      The trial Court in *Dillon* had noted that numerous of these friends and relatives actually
24  appeared at the initial detention hearing, which had been held 9 days after arrest, and were also
25  available at the second hearing 10 days later.  Even in these circumstances, when declining "to
26
27
28

1  disturb the district court's determination", the First Circuit panel emphasized that it was "a close

2  question". *Id.* at 1416.

3       The new information and interpretation of other circumstances in this case presented by

4  Mr. Lyles herein goes well beyond mere "support letters". Although, as will be discussed in

5  greater detail below, such information may have been *theoretically* available to previous counsel

6

7  at the time of the initial hearing, it certainly was not readily or reasonably available to him at that

8  time. This Court's weighing of the equities herein should not be bound by any rigid formulae

9  that would elevate form over substance, despite the prosecution's urgings to the contrary.

10      *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989), cited by the prosecution herein and

11  by the First Circuit in *Dillon*, is similarly factually inapposite. Hare was one of *169 defendants*

12
    indicted in a massive conspiracy to import more than 1,000,000 pounds of marijuana. After
13
    being ordered detained pretrial, Hare sought a second detention hearing.
14

15      The Fifth Circuit agreed with the district court's conclusion that affidavits from his

16  mother and a friend that he had voluntarily surrendered to serve sentences on two prior

17  convictions were not a sufficient showing to justify release. It also rejected his contentions that

18  the hearing should be reopened based upon his excellent conduct as an electrician while

19
    detained, and the length of time he would be held awaiting trial on such a complex case. The
20
    panel also emphasized that "Hare's past record of narcotics convictions and the seriousness of
21
22  the present charges" supported the district court's detention order. *Id.* at 799.

23      It is respectfully suggested that the other two cases cited in the government's Opposition

24  offer still less support for its assertions against reopening the detention issue before this Court.

25  In a 2 page opinion in *United States v. Roberts*, 2007 U.S. Dist. Lexis 2038 (2007), the "new"

26
    proffered evidence included only claims of rehabilitation from previous state narcotics
27

28

1  convictions, and a few letters from friends and relatives.  Similarly in another 2 page opinion,

2  *United States v. Sarivola*, 1995 U.S. District Lexis 10791 (1995) the Court refused to reopen the

3  detention hearing because the defendant wished "to call four family members who did not testify

4  at the first hearing, but gives no specific details as to what they would say."  It noted that these

5  witnesses were available to testify at the first hearing.

6

7  Thus the Lyles case is not at all similar to the serious and extensive conspiracies charged

8  in the cases cited by the government herein, and in most cases, the serious drug-related criminal

9  histories of the defendants.  Likewise, the information and evidence proffered in support of his

10  Motion to Reconsider extends in form and substance well-beyond a few support letters and

11  affidavits from friends and family.  All of it is relevant and important information for this

12  Court's evaluation of an important liberty interest.

13

14  **III.    RESPONSES TO ARGUMENTS PROFFERED BY THE GOVERNMENT IN
15        ITS OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THE
        DETENTION ORDER.**

16

17  **A.    Defendant's admissions were available to him.**

18  It is respectfully suggested that the government's assertion that the contents of Mr. Lyle's

19  statements to law enforcement were "available" to him at the time of the initial detention hearing

20  is disingenuous at best.  There was a 33 minute interrogation of Mr. Lyles by sophisticated law

21  enforcement agents who were seeking by artifice to obtain admissions from him.  They began

22  that effort only moments after he had been awakened from sleep at 5:15 am by a force of 26 FBI

23  Swat Team members using flash grenades to gain entrance through an unlocked front door.

24

25  Under such circumstances, it borders on ludicrous to suggest that Mr. Lyles could

26  remember all of the myriad details of that "grilling".  It is important to note that such recorded

27

28

1  details were certainly available to government counsel at that time, but not to previous counsel

2  for Mr. Lyles or to this Court; however they certainly were readily available to the prosecution.

3      If previous counsel had received that recording before the detention hearing, he may well

4  have sought a continuance in order to do exactly what undersigned counsel did upon receiving it.

5  He could have listened to it slowly, taken detailed notes of its contents and reviewed it

6  thoroughly with Mr. Lyles, and then considered and addressed the charges and evidence in light

7  of what was actually said, and not solely upon what government agents claimed to have

8  remembered.

9

10     As noted in the previously-submitted declaration of undersigned counsel, a careful

11  recounting of the content of that conversation discloses that it hardly constituted a "confession",

12  which term the government now appears to have backed away from, now utilizing the word

13  "admission".  Likewise, in defendant's previous filings on the instant motion, he explained why

14  his *specific* statements, and the circumstances under which they were made, also directly address

15  and ameliorate other concerns that were expressed by this Court in its detention order beside the

16  strength of the evidence relating to flight risk and danger to the community.

17

18

19     **B.    Defendant's search warrant claim is premature and meritless.**

20     Defendant's claims in his moving papers about defects in the search warrant process

21  (application, affidavit, content, service, and seizures) are hardly intended to be dispositive of the

22  issue of detention.  They were included solely to inform this Court that in evaluating the strength

23  of the evidence, there are significant issues to be litigated, thereby detracting from the

24  prosecution's claims in that regard that Mr. Lyles' conviction is inevitable.

25

26

27

28

Previous counsel did not have the benefit of theses documents at the initial detention hearing. They were not unsealed until approximately 10 days after undersigned counsel filed his appearance.

In regard to the possible no-knock violation addressed by the prosecution, the declaration of Inspector McCutcheon is hardly dispositive. It is a question of fact, to be determined by the Court from all of the surrounding circumstances, whether a 20 second delay after the initial knock was sufficient to comply with this Court's refusal to dispense with the statutory and constitutional knock and announce requirements. Likewise, while a violation would not automatically require suppression of all evidence, it would be a significant factor in the reviewing court's analysis of all aspects of the propriety of June 12, 2008 search of Mr. Lyles' residence, including "good faith" if it becomes applicable.

It must also be emphasized that if the search of the residence were to be suppressed, it is highly likely that Mr. Lyles' statements to law enforcement would also be suppressed as unlawfully derived "fruits" of the search. In that event, the government would be hard-pressed to make its case on any count of the indictment.

**C.    Defendant's other claims are not based upon previously unavailable information.**

The "other evidence" addressed at pages 8-9 of the government's Opposition was also not reasonably or readily available to previous counsel at the time of the initial pretrial hearing. For example, the information about the "Filthy Few" contained in defendant's moving papers were "available" only in the sense that it did exist, and *not* that it was readily available to previous counsel in the 4 days between Mr. Lyles' initial appearance and the detention hearing.

1    In its detention order, these aspects of Mr. Lyles HAMC membership were clearly a
2 serious concern for this Court. Undersigned counsel was only aware of the materials through 35
3 years of involvement in HAMC-related cases, and required considerable "digging" to unearth
4 and present to this Court in a meaningful form.

5
6    Likewise, it took some research and investigation to unearth other documentary evidence
7 pertaining to Mr. Lyle's international travel, and to locate and obtain declarations form
8 Mr. Ciocca about his responsibility for Mr. Lyles' failure to appear for a state court hearing.

9    Previous counsel had limited time to prepare for the detention hearing, and made his best
10 effort to do so. It was not his fault that the government did not furnish him with discovery
11 beforehand. If counsel had been given a copy of the recording of the June 12 interrogation, and
12 unsealed search materials, he may well have requested a continuance to study and address them.
13
14    Finally, the prosecution also complained that a portion of defendant's submissions were
15 "argument", and therefore not "new" information. To the contrary, argument at the initial
16 hearing was based *only* upon the information and evidence reasonably known to previous
17 counsel at that time. Clearly the additional facts change the whole nature of the ensuing
18 arguments.

19

20    **IV.    CONCLUSION.**

21    In its moving papers, the prosecution seeks to elevate form over substance in seeking to
22 bar this Court from receiving and considering information that is highly relevant and important
23 to the release decision, and consequently, to Mr. Lyles' liberty interests. It is therefore
24 respectfully requested that the Court reopen the detention hearing, and consider defendant's
25
26 proffered information and arguments.

27

28

Defendant Lyles Reply to Government Opposition to his Motion to Reconsider Detention Order, Page 8

1      Defendant submits that his release from pretrial detention on conditions is wholly

2  appropriate herein, and is mandated by both the letter and the spirit behind the Bail Reform Act

3  of 1984. This is *not* one of those "rare" cases in which detention is required, because Mr. Lyles

4  would not present a flight risk or a danger to any person or the community if released.

5

6  Dated: August 26, 2008.

7

8                         Respectfully submitted:

9                         /s/Alan P. Caplan

                        630 Carolina Street

10                         San Francisco, CA 94107

                       Phone: 826-2371

11                         Fax: 824-7148

12                         E-Mail: apc716@pacbell.net

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **CERTIFICATE OF SERVICE**

3

    I hereby certify that on August 26, 2008, I caused to be electronically filed under seal

4

defendant's reply to the government's opposition to his motion to revoke the detention order

5

with the Clerk of this Court using the CM/ECF system which will send notification of such filing

6

7

to AUSA Wai Shun Wilson Leung.

8

    Dated: August 26, 2008.

9

10

                                s/ Alan P. Caplan
11
                                Alan P. Caplan
                                630 Carolina Street
12
                                San Francisco, CA 94107
                                Phone: 826-2371
13
                                Fax: 824-7148
                                E-Mail: apc716@pacbell.net
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28