1  ALAN P. CAPLAN
   630 Carolina Street
2  San Francisco, CA 94107
   (415) 826-2371
3  (415) 824-7148 (Fax)
   MA Bar No: 072700
4  Email: apc716@pacbell.net

5
   Attorney for Defendant
6  RUSSELL LYLES, JR.

7

8              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10 UNITED STATES OF AMERICA,          )
                                      )   No: CR–08-00420-PJH-1
11             Plaintiff,             )   Date: January 7, 2009
                                      )   Time: 1:30 P.M.
12 vs.                                )
                                      )
13                                    )   **DEFENDANT LYLES NOTICE OF**
   RUSSEL LYLES, JR.                  )   **MOTION AND MOTION TO DISMISS**
14                                    )   **COUNT THREE OF THE INDICTMENT**
                                      )
15             Defendant.            )
   _____)

16

17 TO:   JOSEPH P. RUSSONIELLO, United States Attorney, and W.S. WILSON LEUNG,
         Assistant United States Attorney:
18

19       PLEASE TAKE NOTICE that on Wednesday, January 7, 2009, at 1:30 P.M. in the

20 courtroom of the Honorable Phyllis Hamilton, United States District Judge, or as soon thereafter

21 as counsel may be heard, defendant RUSSELL LYLES, JR., by and through undersigned

22 counsel, will and hereby does move that the Court dismiss Count Three of the indictment.

23       Defendant asserts that Count Three must be dismissed because: (1) 18 U.S.C.,

24 § 922(g)(3) is unconstitutionally vague on its face; (2) 18 U.S.C., § 922(g)(3) is

25 unconstitutionally vague as applied to the circumstances of defendant Lyles' case; (3) that

26
   § 922(g)(3) unconstitutionally and impermissibly proscribes wholly intrastate conduct; and (4)
27

28

1   that §922(g)(3) impermissibly seeks punish a physical status, all in violation of the Second, Fifth

2   and Eighth Amendments to the United States Constitution.

3       In support of the instant motion defendant relies upon this motion and memorandum of

4   points and authorities, the pleadings and record in this case, and such further evidence and

5   argument as the Court may receive.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**POINTS AND AUTHORITIES**

2

3

**Table of Contents**

4

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Table of Authorities . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Statement of Issues . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. INTRODUCTION AND STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

COUNT THREE MUST BE DISMISSED BECAUSE SECTION 922(g)(3), AS WRITTEN, IMPERMISSIBLY CONFLICTS WITH THE GUARANTEES OF THE SECOND AMENDMENT TO THE U.S. CONSTITUTION BY CRIMINALIZING THE POSSEESION OF LAWFUL FIREARMS BY ONE NOT UNDER ANY DISABILITY FOR PAST MISCONDUCT OR ACTIONS.

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

COUNT THREE MUST BE DISMISSED BECAUSE SECTION 922(g)(3), AS APPLIED, IMPERMISSIBLY CONFLICTS WITH THE GUARANTEES OF THE SECOND AMENDMENT TO THE U.S. CONSTITUTION BY CRIMINALIZING THE POSSESSION OF LAWFUL FIREARMS BY ONE NOT UNDER ANY DISABILITY FOR PAST MISCONDUCT OR ACTIONS.

IV. ARGUMENT . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

18 U.S.C., §922(g)(3) PUNISHES WHOLLY INTRASTATE CONDUCT, AND IS THEREFORE UNCONSTITUTIONAL AS WRITTEN AND AS APPLED TO THE CIRCUMSTANCES OF THIS PROSECUTION.

V. ARGUMENT . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

APPLICATION OF 18 U.S.C., §922(G)(3) TO THE CIRCUMSTANCES OF THIS CASE VIOLATES THE FIFTH AND EIGHTH AMENDMENTS TO THE CONSTITUTION UNDER PRINCIPLES SET FORTH IN *ROBINSON V. CALIFORNIA*, 370 U.S. 660, 82 S.CT. 1417, 8 L.ED.2D 758 (1962).

VI. CONCLUSION . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

28

1

## Table of Authorities

2 Cases

3 *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) . . . . . . . . . . . . . . . . 19-20

4 *Heller v. District of Columbia*, 128 S. Ct. 2783, 171 L. Ed.2d 637 (2008) . . . . . 6-7, 9-13, 15-16

5
6 *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) . . . . . . . 7, 18, 20

7 *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) . . . . . . . . . . 13

8 *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) . . . . . . . . . 7, 20-21

9 *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10 *State v. Reid*, 1 Ala. 612, 616-617 (1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11 *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 9

12
13 *United States v. Latu*, 479 F.3d 1153 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14 *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L. Ed.2d 626 (1995) . . . . . . 7, 18, 20

15 *United States v. Morrison*, 529 U.S. 848, 120 S. Ct. 1740, 146 L.Ed.2d 902 (2000) . 7, 18, 20, 22

16 *United States v. National Dairy Products Corp.*, 371 U.S. 29, 83 S.Ct. 594,
   9 L.Ed.2d 561 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 14

17
18 *United States v. Ocegueda*, 564 F.2d 1363 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . 8-9, 16-17

19 *United States v. Purdy*, 274 F.3d 809, 811 (9th Cir 2001) . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 17

20 *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 9, 13

21 *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

22 *United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 9

23

24 Constitution

25 First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-10, 12, 16

26 Second Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-13, 15-16, 18

27

28

**Statutes**

18 U.S.C., §922(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 6-10, 12-18, 20-21

21 U.S.C., §802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Robinson Patman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

### Statement of Issues

1.  Must Count Three be dismissed as unconstitutional on its face, because 18 U.S.C. §922(g)(3) conflicts with the guarantee of the Second Amendment of a citizen's constitutional right to keep and bear arms?

2.  Must Count Three be dismissed as unconstitutional as applied, because 18 U.S.C. §922(g)(3) conflicts with the guarantee of the Second Amendment of a citizen's constitutional right to keep and bear arms.

3.  Must Count Thee be dismissed because 18 U.S.C. §922(g)(3) as written and as applied punishes wholly intrastate conduct.

4.  Must Count Thee be dismissed because 18 U.S.C. §922(g)(3), as applied to the circumstances of this case, constitutes cruel and unusual punishment in violation of the Fifth and Eighth Amendments because it criminalizes a physical condition in violation of the principles of ***Robinson v. California***, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

1

2    **I.      INTRODUCTION AND STATEMENT OF FACTS.**

3        Count Three of the indictment charges that on June 12, 2008, defendant Lyles, "while an

4    unlawful user of a controlled substance (as defined in section 102 of the Controlled Substances

5    Act, 21 U.S.C. § 802), to wit, marijuana, unlawfully, willingly and knowingly did possess a

6    firearm in and affecting interstate and foreign commerce".   The indictment then identified 6

7    firearms that were allegedly wrongfully possessed by him.

8

9        June 12, 2008, was the date on which federal, state and local law enforcement agents

10   executed a search warrant at Mr. Lyles' residence in Willets, California, and effected his arrest.

11   In addition to an indoor growing operation of 84 marijuana plants, the agents seized the six

12   firearms identified in the indictment.

13

14       At the time of the search and arrest, Mr. Lyles was not a felon or under any other state or

15   federal firearms disability.   Likewise, all of the seized firearms were inherently "legal" for him to

16   possess, in that none were stolen or altered in any improper way.

17       Mr. Lyles was also in compliance with relevant California state laws pertaining to the

18   possession and growing of medicinal marijuana.   None of the seized firearms were stored within,

19   or in close proximity to the marijuana grow room.

20

21       It is defendant's first contention that 18 U.S.C., § 922(g)(3) is facially unconstitutional

22   under a void-for-vagueness analysis.   That is, a person cannot reasonably understand what

23   conduct is proscribed by that subsection.   Although this legal claim has been repeatedly rejected

24   in all Circuits prior to the Supreme Court's recent decision in ***Heller v. District of Columbia***, 128

25   S. Ct. 2783, 171 L. Ed.2d 637 (2008), defendant asserts that the substance and rationale of ***Heller***

26   requires re-examination of that line of decisions, and a different conclusion.

27

28

1    ***Heller*** unequivocally confirmed that individuals do have a constitutional right to possess

2    lawful firearms, a right that is protected by the Second Amendment to the U.S. Constitution.

3    Therefore, previous jurisprudence pertaining to 18 U.S.C. §922 must be re-examined in the

4    context of Justice Scalia's assertion that the rights conferred by the people in enacting the

5    Second Amendment are equivalent in impact to the freedom-of-speech guarantee conferred by

6    the First Amendment, which was also the product of "interest-balancing" by the people.   ***Id.*** at

7    2821.

8

9    Mr. Lyles next asserts that even if it is determined that Section 922(g)(3) does not facially

10   violate the Second Amendment, it is unconstitutional as applied to Mr. Lyles circumstances

11   under the traditional analysis that excludes "strict scrutiny".   In this "void for vagueness"

12   argument, defendant asserts that §922(g)(3) unconstitutionally fails to put him on notice that the

13   conduct charged in Count Three was criminal.

14

15   Defendant also asserts that as written and as applied to Mr. Lyles' case, §922(g)(3)

16   impermissibly and unconstitutionally punishes wholly intrastate conduct.   That is, Congress has

17   criminalized conduct that does not fall within any of the three categories of activity that enable

18   federal commerce regulation, as explicated in ***United States v. Lopez***, 514 U.S. 549, 115 S.Ct.

19   1624, 131 L. Ed.2d 626 (1995); ***United States v. Morrison,*** 529 U.S. 848, 120 S. Ct. 1740, 146

20   L.Ed.2d 902 (2000), and ***Jones v. United States***, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902

21   (2000).

22

23   Lastly, defendant submits that the application of §922(g)(3) to Mr. Lyles constitutes cruel

24   and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution by

25   effectively criminalizing "addiction" and "use" of marijuana (as opposed to sale, manufacturing

26   or possession).   In ***Robinson v. California***, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962),

27

28

1  the Supreme Court held that the "status" of "addiction", in and of itself, may not be criminalized.

2  Thus defendant asserts that the proscriptions in §922(g)(3) against possession of a lawful firearm

3  by one not under a disability for past adjudicated conduct, is constitutionally impermissible.

4

5   **II.     COUNT THREE MUST BE DISMISSED BECAUSE SECTION 922(g)(3), AS
6            WRITTEN, IMPERMISSIBLY CONFLICTS WITH THE GUARANTEES OF
7            THE SECOND AMENDMENT TO THE U.S. CONSTITUTION BY
             CRIMINALIZING THE POSSEESION OF LAWFUL FIREARMS BY ONE
             NOT UNDER ANY DISABILITY FOR PAST MISCONDUCT OR ACTIONS.**

8          For many years, federal courts have routinely rejected constitutional challenges to the

9   provisions of 18 U.S.C., § 922 generally, and to subsection 922(g)(3) in particular.  For example,

10
    in *United States v. Ocegueda*, 564 F.2d 1363 (9th Cir. 1977), the Court rejected a facial
11
    constitutional challenge to 18 U.S.C. §922(h), the statutory predecessor of the current provision,
12
13  18 U.S.C. §922(g)(3), noting that the Supreme Court had sharply limited the scope of the

14  "vagueness doctrine" in non-First Amendment cases.

15         This basis for this restricted focus was well explicated in *United States v. National Dairy*

16  *Products Corp.*, 371 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), involving a constitutional
17
    challenge to a federal prosecution under the Section 3 of the Robinson-Patman Act.  The Court
18
19  rejected the defendant's effort to make an "abstract" challenge to the constitutionality of that

20  section on "void for vagueness" grounds, citing *United States v. Raines*, 362 U.S. 17, 22 (1960)

21  for the proposition that "'[t]he delicate power of pronouncing an Act of Congress
22
    unconstitutional is not to be exercised with reference to hypothetical cases.'"  *National Dairy*
23
    *Products*, 372 U.S. at 32.
24
25         The Supreme Court further explained that "the strong presumptive validity that attached

26  to an Act of Congress has led this Court to hold many times that statutes are not automatically

27  invalidated as vague simply because difficulty is found in determining whether certain marginal

28

1  offenses fall within their language. [Therefore] [v]oid for vagueness simply means that criminal

2  responsibility should not attach where one could not reasonably understand that his contemplated

3  conduct is proscribed." [Citation omitted]. *Id.* at 32-33.

4      As a result, the Court held that the sufficiency of a statute must necessarily be examined

5  "in the light of the conduct with which a defendant is charged." *Id.* at 33.  The Court also felt

6

7  that it was important to note an exception to this analysis for defendants' challenges in cases

8  arising under the First Amendment:

9      "There we are concerned with the vagueness of the statute 'on its face' because such
       vagueness may in itself deter constitutionally protected and socially desirable conduct."
10     *Id.* at 36.

11     Likewise, in *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228

12
   (1975), the Court confirmed that statutes that do not involve First Amendment Freedoms must be
13
   examined in light of the case at hand, citing *United States v. Maurie*, 419 U.S. 544, 95 S.Ct. 710,
14
15  42 L.Ed.2d 706 (1975).  Therefore, as in *Ocegueda, supra*, repeated decisions in this and other

16  circuits have rejected out of hand challenges to the *facial* validity of 18 U.S.C. §922(g)(3).

17  *United States v. Purdy*, 274 F.3d 809, 811 (9th Cir 2001); *United States v. Rodriguez*, 360 F.3d

18  949, 953 (9th Cir. 2004).  The Circuit Courts had also uniformly rejected Second Amendment

19
   challenges to the constitutionality of §922, holding that the Second Amendment "does not confer
20
   an individual right to possess arms." *United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir.
21
22  2005); *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002); *United States v. Everist*, 368 F.3d 517,

23  519 (5th Cir. 2004).

24     All of this jurisprudence was significantly altered by the Supreme Court in June 2008 in

25  *Heller*.  Justice Scalia began the Court's detailed examination of the issue by asserting:

26

27

28

1        We start therefore with a ***strong presumption*** that the *Second Amendment* right [to keep
2 and bear arms] is ***exercised individually and belongs to all Americans***." *Heller*, 128
S.Ct. at 2791. (Emphasis added).

3 The Court further explained that the Second Amendment guarantees the individual right to
4 possess and carry weapons in case of confrontation, and that this meaning is strongly confirmed
5 by the historical background of the Second Amendment, and emphasized:
6

7        "[I]t has always been widely understood that the ***Second Amendment***, like the First and
Fourth Amendments, codified a ***pre-existing*** right. The very text of the ***Second
8 Amendment*** implicitly recognizes the pre-existence of the right and declares that it "shall
not be infringed". *Heller*, 128 S.Ct. at 2797. (Emphasis in original).
9

10        Justice Scalia continued the Court's analysis by comparing Second Amendment rights to
11 those conferred by the First Amendment, concluding there was no doubt, on the basis of both
12 text and history, that the Second Amendment "conferred an individual right to keep and bear
13 arms." *Id.* at 2799. The Court also emphasized, however, that this constitutional right was no
14 more unlimited than was First Amendment's right of free speech; therefore, citizens did not have
15 wholly unfettered rights to carry arms for "any sort of confrontation" or to speak for "any
16 purpose". *Id.*
17

18        In his historical analysis for the majority, Justice Scalia also noted that it was
19 unsurprising that the essential nature of the Second Amendment right to keep and bear arms had
20 not previously been judicially resolved, because for most of our history the Bill of Rights had not
21 been thought applicable to the states, and because there had been no significant federal
22 regulation of the possession of firearms by law-abiding citizens. For example, the Supreme
23 Court first held that a law violated the First Amendment guarantee of freedom of speech in 1931,
24 almost 150 years after that amendment was ratified. *Id.* at 2816.
25

26        The *Heller* Court also stated that the Court's decision should not be interpreted as casting
27 doubt "on longstanding prohibitions" on possession of firearms by felons and mentally ill
28

1  persons, or against carrying them in "sensitive places such as schools or public buildings". *Id.* at

2  2816-2817. Although the Court stated that the list did not purport to be exhaustive, neither did it

3  single out the prohibition against possession of lawful firearms by drug users among its examples

4  of permissible limitations of the broad Second Amendment guarantee. *Id.*, fn. 26.

5

6          The *Heller* Court then directly addressed the District of Columbia law at issue, which

7  totally banned the possession of handguns within the home, and required that any lawful firearm

8  within the home be rendered inoperable either by disassembly or trigger lock. *Id.* at 2817. It

9  began by stressing that "*the inherent right of self defense has been central to the Second*

10  *Amendment right*." *Id.* at 2717. (Emphasis added).

11          It concluded that "under any standard of scrutiny that we have applied to enumerated

12  constitutional rights, banning the most preferred weapon in the nation for protection of home and

13  family, "would fail constitutional muster." *Id.* at 2717-2718. "'A statute which, under the

14  pretense of regulating, amounts to a destruction of the right, or which requires arms to be so

15
16  borne as to render them wholly useless for the purpose of defence, would be clearly

17  unconstitutional." *Id.* at 2718, quoting *State v. Reid*, 1 Ala. 612, 616-617 (1840).

18          The Court then explicitly held invalid, a complete prohibition against the possession of

19  handguns "the most popular weapon chosen by Americans for self-defense in the home".

20  Likewise, it found that law's further requirement that other firearms in the home be rendered or

21
22  kept inoperable, "makes it impossible for citizens to use them for the core lawful purpose of

23  self-defense and is hence unconstitutional." *Id.*

24          Justice Scalia firmly rejected the suggestion in Justice Breyer's dissent that there should

25  be some form of "interest-balancing inquiry" in determining the appropriate level of scrutiny for

26  evaluating the constitutionality of restrictions upon Second Amendment guarantees.   "A

27

28

constitutional guarantee subject to future judge's assessments of its usefulness is no constitutional guarantee at all." *Id.* at 2821.  Instead, the Court emphasized the parallel between the rights conferred by the First and Second Amendments:

> "The *First Amendment* contains the freedom-of-speech guarantee that *the people ratified*, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views.  *The Second Amendment is no different*.  Like the First, it is the very *product* of an i*nterest-balancing by the people*, which Justice Breyer would now conduct for them anew.  *Id.*  (Emphasis added).

The Court explicitly stated that it would not adopt a specific standard of scrutiny for future Second Amendment challenges, as it was its first in-depth examination of the Second Amendment.  It suggested that "there will be time enough to expound on the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Id.*

Applying the teachings of *Heller* to the case at bar, the issue becomes whether §922(g)(3)'s prohibition against possession of lawful firearms in a home for the purpose of self-defense by a "user" of an unlawful controlled substance passes constitutional muster.  That is, does it fall within one of the historical justifications for imposition of a limitation upon citizens' exercise of their Second Amendment rights?

In making such determination, this Court must first determine whether it agrees with defendant's contention that after *Heller*, Second Amendment issues may also be a basis for challenging the vagueness of a statute on its face "because such vagueness may in itself deter constitutionally protected and socially desirable conduct".  This was the Supreme Court's rationale in *National Dairy Products*, *supra*, for allowing such challenges in First Amendment cases.

1      *Heller* made clear that possession in one's home of inherently lawful firearms for

2  self-defense is at the "core" of the Second Amendment's constitutional guarantee. As such, it

3  may not be circumscribed except for what Justice Scalia referred to as "longstanding

4  prohibitions" on the possession of firearms such as by felons and the mentally ill. Defendant

5  respectfully submits that an "unlawful user" of a controlled substance does not fit into this

6  historical construct.

7      In *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) the

8

9  Court cogently described the "void-for-vagueness" doctrine:

10      "As generally stated, the void-for-vagueness doctrine requires that a penal statute define
     the criminal offense with sufficient definiteness that ordinary people can understand what
11      conduct is prohibited and in a manner that does not encourage arbitrary and
     discriminatory enforcement. [Citations omitted]. Although the doctrine focuses on
12      actual notice to citizens and arbitrary enforcement, *we have recognized recently that the*
     *more important aspect of the vagueness doctrine 'is not actual notice, but the other*
13      *principal element of the doctrine – the requirement that a legislature establish minimal*
     *guidelines to govern law enforcement.* (Emphasis added).
14

15  The *Kolender* Court then warned against a law that "allows policemen, prosecutors and juries to

16  pursue their personal predilections." *Id.* at 357-358. Accord, *United States v. Rodriguez*, 360

17  F.3d 949, 953 (9th Cir. 2004), which instructed that to show a statute to be unconstitutionally

18  vague, defendant must demonstrate that it "(1) does not define the conduct it prohibits with

19  sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement".

20

21      In the case at bar, under the *Heller* strict scrutiny requirement for Second Amendment

22  challenges, §922(g)(3) fails to provide any guidelines whatsoever to guide citizens, law-

23  enforcement agents, prosecutors, judges and juries in determining when a person who has at any

24  time been an "unlawful user" of a controlled substance loses his/her right to keep and bear lawful

25  firearms, as guaranteed to them by the Second Amendment. For example:

26

27

28

1    •  How close does the "unlawful use" and possession of a firearm have to be physically and
temporally to trigger a prosecution and sustain a conviction?

2

3    For example, if on a single occasion a person took a single puff of marijuana at a concert

4 hall, and at the time had firearms at home, can he/she be charged and convicted for violating

5 §922(g)(3) while at the concert?

6    •  Will a single unlawful use of a controlled substance be sufficient to trigger a prosecution
and sustain a conviction? If a single unlawful use of a controlled substance will not

7    support a charge and conviction, how many unlawful uses will do so? If more than a

8    certain number of unlawful uses are required, does it make a difference if each unlawful
use involves a different controlled substance? If a certain minimum number of unlawful

9    uses are required, is there a temporal component to such uses as a precondition to charge
and conviction?

10

11    For example, if a person used marijuana once on New Years Eve, and on June 30th of the

12 following calendar year purchased firearms that were kept at home, can he/she be charged and

13 convicted for violating §922(g)(3)?

14    •  Does the nature and source of the controlled substance that was unlawfully used make

15    any difference? Does the amount of the controlled substance ingested make any
difference?

16

17    For example, if one possessed lawful firearms at his/her residence, and on a single

18 occasion took a pain pill that had been prescribed for his/her spouse, may that person be

19 prosecuted and convicted for a violation of §922(g)(3)? Does it matter whether or not the

20 unlawful use is of a controlled substance that does not alter behavior or perceptions, such as a

21 medication to suppress allergies? Is ingestion of a single pill once a month over a year, or

22 ingestion of a gram of cocaine on a single occasion sufficient?

23

24    The Supreme Court noted in *National Dairy Products Corp. supra*, 372 U.S. at 32, that a

25 statute may fail under the stricter standard of scrutiny if certain constitutionally protected

26 marginal conduct and offenses fall within its purview. Mr. Lyles submits that the provisions of

27 §922(g)(3) support charges and convictions on a myriad examples of conduct that is "marginal".

28

1    Neither the statute itself, nor any other provision of federal law clarifies the inherent

2  ambiguities in that section, nor does that section offer any guidance whatsoever to citizens, law

3  enforcement agents, prosecutors, judges and jurors as to exactly what conduct is criminal.

4  Indeed, the pre-*Heller* case law explicitly leaves these matters open to interpretation on an

5  *ad hoc*, case-by-case basis by all of these individuals.

6

7    The pre-*Heller* case law in this Circuit for defining "unlawful user" forcefully

8  demonstrates the *ad hoc* nature of interpreting the statutory  proscriptions of §922(g)(3).  For

9  example, in ***United States v. Purdy***, *supra*, 264 F.3d at 813, the Court held: "under §922(g)(3)

10  the government must prove that defendant took drugs with regularity, over an extended period of

11  time, and contemporaneously with his purchase or possession of a firearm."

12

13    This leaves citizens who wish to exercise their Second Amendment right to bear and keep

14  lawful firearms within their homes with little guidance as to what conduct is unlawful.  How

15  often constitutes "regularity"?  How long a period of time is sufficient to be considered

16  "extended" -- a week, a month, a year?  Does the number of occasions make a difference  --

17  once a month for six months or 5 times over a single week?  All of these issues must also be

18  resolved by law enforcement agents in determining whether and when to arrest a person, by the

19  prosecutors in determining whether to charge the person, and by a judge and jury in determining

20  whether a person charged with a violation of §922(g)(3) will be convicted.

21

22    Such uncertainty in the exercise of citizens' Second Amendment right to keep and bear

23  lawful firearms at their homes cannot be countenanced after ***Heller***.  Therefore, this Court must

24  dismiss Count Three of the indictment on the ground that under the strict scrutiny standard for

25  Second Amendment challenges, it fails to provide explicit guidance such that ordinary people

26

27

28

1 can understand what conduct is prohibited and effectively encourages arbitrary and

2 discriminatory enforcement.[1]

3

4 **III.  COUNT THREE MUST BE DISMISSED BECAUSE SECTION 922(g)(3), AS APPLIED, IMPERMISSIBLY CONFLICTS WITH THE GUARANTEES OF THE SECOND AMENDMENT TO THE U.S. CONSTITUTION BY CRIMINALIZING THE POSSESSION OF LAWFUL FIREARMS BY ONE NOT UNDER ANY DISABILITY FOR PAST MISCONDUCT OR ACTIONS.**

5

6

7 This argument defendant is advanced for the Court's consideration only if it determines

8 not to conduct a "strict scrutiny", void-for-vagueness analysis to defendant's Second

9

10 Amendment claim.   In that event, the Court must determine whether §922(g)(3) is

11 unconstitutional as applied in the circumstances of this case, or more particularly, whether it is

12 impermissibly vague in the circumstances of this case.  Thus the specific issue in the context of

13 this argument is whether the language of §922(g)(3) put Mr. Lyles on notice that his conduct

14 violated its criminal proscription. ***United States v. Purdy****, supra*, 264 F.3d at 811; ***United States***

15 ***v. Ocegueda****, supra*, 564 F.2d 1365.

16

17 In ***Ocegueda***, the Court noted: "Had Ocegueda used drugs that may be ***used legally by***

18 ***laymen in some circumstances*** or had his use of heroin been infrequent and in the distant past,

19 we would be faced with an entirely different vagueness challenge to the term unlawful user".

20 ***Ocegueda***, 564 F.2d at 1366.  In ***Purdy***, the Court utilized this quote from ***Ocegueda***, and

21 asserted that "we think this language bears repeating".  It further emphasized that to sustain a

22 conviction the government must prove "that defendant took drugs ***with regularity***, over an

23

24    Counsel must bring to the Court's attention the case of ***United States v. Yancey***, 2008 U.S. Dist. Lexis 77878 (D.Kan. October 3, 2008).  In that case the district judge rejected a ***Heller*** challenge to the constitutionality of §922(g)(3) in a 2 page conclusory opinion that "nothing in ***Heller*** restricts the federal government from criminalizing possession of firearms by unlawful users of controlled substances." ***Yancey*** at P. 2.  The only analysis was that post-***Heller*** decisions in other district courts have rejected such constitutional challenges in cases involving possession of firearms by felons or by persons convicted of domestic violence offenses.  This begs the question, because one can be convicted of violating subsection (g)(3) without any prior adjudication of unlawful conduct.  In addition, the Kansas Court failed to consider the impact of the fact that ***Heller*** equated the Second Amendment with the First Amendment in its fundamental importance, and therefore did not apply a "strict scrutiny" standard.

25

26

27

28

1  extended period of time, and contemporaneously with his purchase or possession of a firearm".

2  *Purdy*, 264 F.3d at 812-813.  (Emphasis added).

3      In *Ocegueda*, the defendant was found with a rifle on a table with a glass pipe containing

4

5  methamphetamine residue, and told the agents that he used marijuana and methamphetamine and

   that everyone knew it.  A girlfriend also testified as to extensive drug ingestion with Ocegueda
6

7  over a period of years.  In *Purdy*, the defendant had been committed to a rehab center for heroin

8  addiction, was enrolled in a methadone program, when arrested had extensive "track marks" on

9  his arm, and told officers that he had used $25.00 worth of heroin on the day of his arrest.

10     In the case at bar, the evidence of marijuana use by Mr. Lyles was a statement elicited in

11 the context of questions about the medical issues of those for whom he provided marijuana under

12
   California state law.  The agents asked Mr. Lyles: "How much marijuana do you smoke in a
13

14 week?"  Recorded Conversation DS-400021, at 11:30 Minutes.  Mr. Lyles responded that he

15 smoked a little before bedtime "for anxiety", and added: "Just a couple of tokes".

16     It is important to note that the *sole issue* to be resolved in this argument is whether

17 §922(g)(3) adequately put Mr. Lyles on notice that his taking a couple of puffs of a marijuana

18 cigarette at bed time would violate that law?  Of particular significance to this calculation is the

19
   fact that he had a license to grow and use marijuana for medicinal purposes from the State of
20

21 California, and therefore sincerely believed that his use of marijuana was lawful.

22     It would seem that this factual posture is the exact situation to which Ninth Circuit panels

23 referred in both *Ocegueda* and *Purdy*, as discussed above, when they asserted that had the drugs

24 ingested been of a kind that *may be used legally by laymen in some circumstances*, the results in

25 those cases may have been different.  *Ocegueda*, 564 F.2d at 1366; *Purdy*, 264 F.3d at 812.  The

26 sole drug that Mr. Lyles is accused of ingesting is marijuana, and it may be used legally by

27

28

1   laymen within the State of California in circumstances when, like Mr. Lyles, they have a

2   prescription for its use from a licensed physician.

3       Thus Mr. Lyles respectfully submits that the provisions of 18 U.S.C., §922(g)(3) are

4   unconstitutionally void-for-vagueness as applied to the circumstances of his case. For the

5   foregoing reasons, it is clear that the statutory provisions failed to adequately place him on notice

6   that his exercise of his Second Amendment constitutional right to possess lawful firearms within

7   his home for purposes of self-defense would violate its criminal proscription.

8

9

**IV.     18 U.S.C., §922(g)(3) PUNISHES WHOLLY INTRASTATE CONDUCT, AND IS**
10   **THEREFORE UNCONSTITUTIONAL AS WRITTEN AND AS APPLED TO**
      **THE CIRCUMSTANCES OF THIS PROSECUTION.**
11

12      Defendant also asserts that as written and as applied to Mr. Lyles' case, §922(g)(3)

13   impermissibly and unconstitutionally punishes wholly intrastate conduct. That is, Congress has

14   criminalized conduct that does not fall within any of the three categories of activity that enable

15   federal commerce regulation, as explicated in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct.

16   1624, 131 L. Ed.2d 626 (1995); *United States v. Morrison*, 529 U.S. 848, 120 S. Ct. 1740, 146

17   L.Ed.2d 902 (2000), and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902

18

19   (2000).

20      In *Lopez*, the Court held that 18 U.S.C. §922(q), the provisions of the Gun-Free School

21   Zones Act did address activity that supported federal regulation of commerce: (1) the channels of

22   interstate commerce; (2) the instrumentalities of interstate commerce; or (3) activities having a

23   substantial relation to interstate commerce. In *Morrison*, the Court struck down a civil remedy

24   included in the Violence Against Women Act As exceeding the scope of congressional

25

26   commerce power.

27

28

1     In *Jones*, the Court reversed a conviction under the federal arson statute, holding that an

2   owner-occupied residence was not used and did not affect interstate commerce in such a fashion

3   as to support a federal prosecution.  However in *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195,

4   162 L.Ed.2d 1 (2005), the Court held that the federal government could prosecute persons who

5   were in compliance with California's Compassionate Use [of marijuana] Act, even if the

6   marijuana in question were produced and consumed locally.

7

8     In *Raich*, after federal agents had seized and destroyed six marijuana plants, plaintiffs

9   sought injunctive relief against being prosecuted for violation of federal marijuana laws when

10  they were in full compliance with the California Compassionate Use Act.  The Court's rationale

11  was that even if the activity were wholly intrastate, and even if the activity is not regarded as

12  "commercial" (not produced for sale), it may still be regulated by Congress if it exerts a

13  substantial economic affect on interstate commerce.    In that case, even marijuana meant wholly

14  for home consumption was found to have a "substantial effect" on supply and demand for

15  marijuana nationally.

16

17    In two post-*Raich* decisions, the Ninth Circuit rejected claims that provisions of §922

18  were constitutionally invalid under the Commerce Clause.  In *United States v. Stewart*, 451 F.3d

19  1071 (9th Cir. 2006), the Court denied defendant's claim that his prosecution under 18 U.S.C.

20  §922(o), for possession of machine guns that he had manufactured wholly intrastate violated the

21  Commerce Clause and was therefore unconstitutional.  The Court held that in light of *Raich*,

22  "the machinegun possession ban fits within a larger scheme for the regulation of interstate

23  commerce", and that Congress "had a rational basis for concluding that in the

24  aggregate, possession of homemade machineguns could substantially affect interstate commerce

25  in machineguns.".  *Id.* at 1076, 1077.

26

27

28

1    In *United States v. Latu*, 479 F.3d 1153 (9th Cir. 2007), the Court upheld the defendant's

2   convictions for firearm possession while being an alien who was unlawfully in the United States,

3   18 U.S.C. §922(g)(5)(A), and possession of the same firearm while being an alien admitted to

4   the country under a non-immigrant visa, §922(g)(5)(B).   Citing *Stewart*, the Court rejected

5   Latu's Commerce Clause challenge to the application of the two provisions of §922 because

6   "possession is regulated as part of a general regulatory statute that substantially relates to

7   interstate commerce in firearms." *Latu*, 479 F.3d at 1156.

8

9    Defendant Lyles asserts that the charge in Count Three compels a different result.

10  Neither of the two "triggers" in §922(g)(3) involves or affects interstate commerce.   The

11  controlled substance trigger is for "personal *use*"; not possession, sale or manufacturing.

12  *Ingestion* (use) of a controlled substance by an individual is unquestionably *not economic*, is

13  wholly local in origin, and in this case was lawful under California law.   The second trigger is

14  possession of a lawful firearm, by a person who is under no firearms disability for prior

15  misconduct.   Such possession, as applied in the circumstances of this case is also clearly *not*

16  *economic*.

17

18   Therefore, defendant submits that the *Lopez, Jones, Morrison* line of cases must be

19  applied herein, rather than *Raich*.   The activities proscribed by §922(g)(3), as applied in this

20  case, involve neither the channels of interstate commerce, the instrumentalities of commerce

21  power, nor do they have a substantial relation to interstate commerce.   Therefore, Count Three

22  must be dismissed.

23

24  //

25  //

26  //

27

28

V. **APPLICATION OF 18 U.S.C., §922(G)(3) TO THE CIRCUMSTANCES OF THIS CASE VIOLATES THE FIFTH AND EIGHTH AMENDMENTS TO THE CONSTITUTION UNDER PRINCIPLES SET FORTH IN *ROBINSON V. CALIFORNIA*, 370 U.S. 660, 82 S.CT. 1417, 8 L.ED.2D 758 (1962).**

Lastly, defendant submits that the application of §922(g)(3) to Mr. Lyles constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution by effectively criminalizing "addiction" and "use" of marijuana (as opposed to sale, manufacturing or possession). In ***Robinson v. California***, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Supreme Court held that the "status" of "addiction", in and of itself, may not be criminalized.

"Use" of a controlled substance is an essential and unavoidable part of addiction to a controlled substance. It is obviously impossible to become a drug addict without ***using*** controlled substances.

In essence, use is a "lesser and included function" of addiction. Therefore, if one may not be imprisoned for the "status" of drug addiction, one may not be imprisoned for the "lesser status" of being a drug 'user'. Although the criminal conduct proscribed by §922(g)(3) is possession of a lawful firearm, the ***sole*** factor that makes such possession a crime is previous unlawful ***use*** of a controlled substance. Thus defendant asserts that the proscriptions in §922(g)(3) against possession of a lawful firearm by a user of controlled substances who is not under a disability for past adjudicated conduct, is constitutionally impermissible as constituting Cruel and Unusual Punishment in violation of the Eight Amendment and the Due Process clause of the Fifth Amendment.

VI. **CONCLUSION.**

Defendant respectfully submits that for the foregoing reasons, the Court should dismiss Count Three of the above-numbered indictment.

Defendant Lyles' Notice of Motion and Motion to Dismiss Count Three, Page 21

Dated:  October 17, 2008.

                              Respectfully submitted:

                              /s/Alan P. Caplan
                              630 Carolina Street
                              San Francisco, CA 94107
                              Phone: 826-2371
                              Fax: 824-7148
                              E-Mail: apc716@pacbell.net


                    **CERTIFICATE OF SERVICE**

    I hereby certify that on October 17, 2008, I caused the foregoing motion to be electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to AUSA Wai Shun Wilson Leung.

    Dated: October 17, 2008.

                              /s/Alan P. Caplan
                              630 Carolina Street
                              San Francisco, CA 94107
                              Phone: 826-2371
                              Fax: 824-7148
                              E-Mail: apc716@pacbell.net